UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

CARRIE RAYETTE HENDRICK,    )
                            )
            Plaintiff,      )
                            )
v.                          )        Civil Action No. 7:22-cv-00686
                            )
STRYKER CORP., *et al.*,    )
                            )
            Defendants.     )

## ANSWER AND DEFENSES

COME NOW Stryker Corp. ("Stryker Corp."), Wright Medical Technology, Inc. ("Wright Medical"), Stryker Sales, LLC ("Stryker Sales"), Howmedica Osteonics Corp. ("Howmedica") (collectively, "Corporate Defendants"), and Tim Lanier ("Lanier") and Avery Augustine ("Augustine"), (together with the Corporate Defendants, "Stryker Defendants"), by counsel, to respond to the Complaint filed by Carrie Rayette Hendrick ("Hendrick").

### PRELIMINARY STATEMENT

Stryker Defendants recount in *italics* the allegation(s) contained in the corresponding numbered paragraph from the Complaint, and thereafter, following the phrase "ANSWER:", is the Stryker Defendants' response to that/those allegation(s). The bolded headings appear in the Complaint; they are included for ease of readability, but Stryker Defendants deny any express or implied allegations contained in the headings.

### Jurisdiction and Venue

1.      *This matter concerns violations of Virginia common law, and raises claims of defamation,*

*defamation per se, and tortious interference.*

ANSWER: Stryker Defendants do not dispute that Hendrick purports to assert various claims under Virginia common law (and statutory law) but deny that Hendrick has stated viable claims as a matter of law.

*2.     Ms. Hendrick is domiciled in the City of Roanoke, Virginia.*

ANSWER: Stryker Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 2 of the Complaint; as such, they are denied.

*3.     Defendants Stryker Corp., Wright Medical Technology, Inc., Howmedica Osteonics Corp., and Stryker Sales, LLC (hereinafter "Corporate Defendants") are corporations that derive significant revenue through their business contacts with the Commonwealth of Virginia, such that personal jurisdiction is proper under Virginia's long-arm statute. Va. Code Ann. § 8.01-328(1), (2), and (3).*

ANSWER: Stryker Defendants aver that the allegations in the Paragraph constitute legal conclusions to which no response is required; to the extent a response is required, those allegations are denied. Answering further, and for the purposes of this litigation only, the Stryker Defendants do not dispute personal jurisdiction over them in this District.

*4.     Upon information and belief, each Corporate Defendant is incorporated under the laws of the State of Delaware. Upon information and belief, Stryker Corp.'s, Howmedica Osteonics Corp.'s, and Stryker Sales, LLC's corporate headquarters are located in the State of Michigan, and Wright Medical Technology's Inc.'s corporate headquarters are located in the State of Tennessee.*

ANSWER:     Denied.

*5.     Tim Lanier and Avery Augustine ("Individual Defendants") are citizens of the State of*

*Texas and Minnesota, respectively. Individual Defendants caused tortious injury to Plaintiff by impugning her personal and professional reputation through defamatory words. Va. Code Ann. § 8.01-328.1(3), (4). Individual Defendants regularly supervise employees that solicit business and derive revenue within the Commonwealth of Virginia.*

ANSWER:  Denied.

*6.       Corporate Defendants employ more than 500 people.*

ANSWER:  Denied.

*7.       Corporate Defendants sell and market medical devices to medical providers.*

ANSWER:  Admitted.

*8.       Venue is proper in this Court, as Corporate Defendants have significant business revenue in Roanoke City, Virginia. Va. Code Ann. § 8.01-262(3).*

ANSWER:  As this matter has been removed to federal court, this allegation is no longer relevant, and no response is necessary.  Answering further, the allegations contained in this Paragraph concern allegations of law and need not be admitted or denied; to the extent a response is required, the Stryker Defendants state as follows:  Denied.

**Facts**

*9.       Ms. Hendrick was hired initially by Wright Medical Technology, Inc., which had recently acquired Tornier NV, as a Medical Devise Salesperson for the company's Virginia market.*

ANSWER:  Stryker Defendants admit that Hendrick started working for Wright Medical in or about February 2017.  All other allegations contained in this Paragraph are denied.

*10.      Subsequently, Wright Medical Technology, Inc. was acquired by Stryker Corp.*

ANSWER: Stryker Defendants admit that Stryker acquired Wright Medical in or about November 2020. All other allegations contained in this Paragraph are denied.

11. *Upon information and belief, Stryker Corp. is the parent company of Wright Medical Technology, Inc., Howmedica Osteonics Corp., and Stryker Sales, LLC, with all subsidiaries being wholly owned by Stryker Corp.*

ANSWER: Stryker Defendants admit that there are several wholly owned subsidiaries of Stryker Corp. All other allegations contained in this Paragraph are denied.

12. *In or about June of 2021, Ms. Hendrick transitioned to the role of Manager for Sales Enablement & Digital Education within Stryker Corp.*

ANSWER: Stryker Defendants admit that Hendrick held the title of Manager for Sales Enablement & Digital Education, deny that she was an employee of Stryker Corp., and is without information to confirm or deny the remaining allegations in this Paragraph,

13. *Ms. Hendrick's immediate supervisor was Avery Augustine, Director of Professional Education. Above Ms. Augustine was Matt Kuester, Vice President of Marketing and Professional Education of the Upper Extremity Division and Tim Lanier, President of Upper Extremity.*

ANSWER: Stryker Defendants admit that immediately prior to her resignation, Augustine was Hendrick's supervisor. The remainder of the allegations contained in Paragraph 13 of the Complaint are denied.

14. *Ms. Hendrick met or exceeded the legitimate business expectations of Corporate Defendants during the entirety of her employment.*

ANSWER: Denied.

15. *Ms. Hendrick was jointly employed by the Corporate Defendants at all times pertinent to this Complaint.*

ANSWER: The allegations in this Paragraph constitute legal conclusions to which no response is required; to the extent a response is required, those allegations are denied.

**A. Ms. Augustine and Mr. Lanier Inappropriately Criticized and Disciplined Ms. Hendrick**

16. *In October of 2021, Ms. Hendrick attended a professional event.*

ANSWER: It is unclear what "professional event" is being referred to in this Paragraph; as such, this allegation is denied.

17. *Ms. Hendrick was chided by Product Manager Mike Rice for answering a phone call from a Product Salesperson during the event. Ms. Hendrick's job responsibilities included educating and answering questions from salespeople, especially during surgeries – sometimes in real time – for the implantation of medical devices. It was a legitimate business expectation that as part of her essential duties, Ms. Hendrick was required to answer calls like the one that occurred during the event.*

ANSWER: Denied.

18. *During the conversation between Ms. Hendrick and Mr. Rice, Ms. Hendrick and Mr. Rice spoke to each other in a manner in which they have spoken to each other in the past.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 18 of the Complaint; as such, those allegations are denied.

19. *The next day, Defendant Augustine provided written discipline to Ms. Hendrick over her interaction with Mr. Rice. Upon information and belief, Mr. Rice was not disciplined for the same interaction, and, in fact, received a promotion shortly thereafter.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

20.    *At the time, Corporate Defendants had a workplace policy that if an individual received written discipline, they were ineligible for promotion for a period of approximately one year.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

**B.    Ms. Hendrick Reported Violations of Law; In Response, Ms. Hendrick was Reprimanded by Ms. Augustine**

21.    *In or about February of 2022, Ms. Hendrick overheard a conversation between two subordinate employees, Eric and Yazmin. Yazmin was open about practicing the Muslim faith.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

22.    *During February of 2022, Muslims observed Ramadan, in which observers of that faith customarily do not eat or drink during daylight hours.*

ANSWER: The allegations contained in this Paragraph are vague and cannot be fairly admitted or denied; as such, they are denied.

23.    *Eric asked Yazmin if she was going to lunch.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

24.    *Yazmin declined and informed Eric that she was not eating lunch.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

25.     *Upon information and belief, Eric knew that Yazmin was a practicing Muslim.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

26.     *Eric retorted, "I don't know why you people do that," or words of similar effect.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

27.     *Ms. Hendrick reported Eric's comments to Corporate Defendants' Human Recourses department, who in turn reported it to Defendant Augustine, Ms. Hendrick's supervisor, as Ms. Hendrick believed, in good faith, that Eric's comment was discriminatory towards Yazmin's religion, in violation of Title VII of the Civil Rights Act and the Virginia Human Rights Act.*

ANSWER:  Denied.

28.     *Ms. Hendrick further believed that she was reporting discrimination against Yazmin, in good faith, because Yazmin told Ms. Hendrick that Eric had berated her on the same grounds the day before.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

29.     *Ms. Hendrick also reported to Human Resources and Defendant Supervisor Augustine that Eric had inappropriate contact with Yazmin and two other female employees. Ms. Hendrick believed that the behavior was sex discrimination, in violation of Title VII of the Civil Rights Act and the Virginia Human Rights Act.*

ANSWER:  Denied.

30.     *Eric pulled Yazmin's hair in a sexually suggestive manner.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in this Paragraph; as such, those allegations are denied.

31.     *The two other female employees reported to Ms. Hendrick that Eric made sexually discriminatory comments towards them.*

ANSWER:  It is unclear and otherwise vague what is being alleged here, including which "two other female employees" are being referred to and when these alleged reports were made; as such, Stryker Defendants deny the allegations in this Paragraph.

32.     *Defendant Augustine chastised Ms. Hendrick for reporting Eric's discriminatory comments and behaviors.*

ANSWER:  Stryker Defendants deny the allegations contained in Paragraph 32 of the Complaint.

**C.      Ms. Hendrick's Work Environment Thereafter Became Untenable, Ultimately Resulting in the Constructive Discharge of Ms. Hendrick's Employment**

33.     *Defendant Augustine continued to lambast Ms. Hendrick over perceived, minor issues with Ms. Hendrick's work performance, while not similarly targeting men or other employees who had not reported discrimination.*

ANSWER:  Stryker Defendants deny the allegations made in this Paragraph.  Responding further, Stryker Defendants aver that, during her employment, Hendrick had been counseled and disciplined about her workplace conduct and/or performance when it was appropriate to do so.

34.     *On or about July 27, 2022, Ms. Hendrick's working environment became so untenable, hostile, and intolerable, that she could no longer work for the Corporate Defendants and was*

*constructively discharged.*

ANSWER:  Denied.

    **D.**      **Ms. Hendrick Received Thereafter a Job Offer; Upon Learning of the Job Offer, Defendant Lanier and Defendant Augustine Falsely Stated to the New Employer's CEO that Ms. Hendrick Threatened to "Burn Stryker Down"**

35.     *Shortly after Ms. Hendrick's constructive discharge, Ms. Hendrick received an employment offer letter from William Fain, the CEO of Southern Medical Technology ("SMT"). SMT is a distributor of Stryker products in the State of Alabama. Ms. Hendrick endorsed the offer letter and transmitted it to SMT.*

    ANSWER:  Stryker Defendants deny that Hendrick was constructively discharged. Answering further, Stryker Defendants are without information to admit or deny the remaining allegations contained in this Paragraph; as such, those allegations are denied

36.     *In response to Ms. Hendrick returning the fully executed offer letter to SMT, SMT's CEO informed Ms. Hendrick in writing, "Well welcome aboard!!!"*

    ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 36 of the Complaint; as such, those allegations are denied.

37.     *Defendants Lanier and Augustine became aware that Ms. Hendrick had been hired by SMT.*

    ANSWER:  Stryker Defendants aver that at some point, Lanier and Augustine received information that Hendrick was or had been in discussions with SMT about employment or potential employment.

38.     *On or about August 1, 2022, Mr. Fain informed Ms. Hendrick that her job offer with*

*SMT was being "placed on indefinite hold."*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 38 of the Complaint; as such, those allegations are denied.

39.     *Ms. Hendrick, shocked because she met all the qualifications a [sic] was well-suited to the job, asked why Mr. Fain stated that he had a "long conversation" with Defendant Lanier regarding Ms. Hendrick. Mr. Fain informed Ms. Hendrick that Defendant Lanier made the following statements to Mr. Fain, each which is patently false and known to be false by the Defendants:*

> a.   *Ms. Hendrick had threatened to "burn down" Stryker's headquarters and made other implicitly criminal threats regarding persons and/or property of Stryker;*
>
> b.   *Ms. Hendrick "acted out," was unprofessional, criminally volatile, and made false and negative comments about Stryker; and*
>
> c.   *Ms. Hendrick was a poor employee, demonstrated poor work performance, and*
>
> d.   *was not suitable for employment.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 39 of the Complaint; as such, those allegations are denied.

40.     *Ms. Hendrick informed Mr. Fain that these assertions were maliciously false allegations and underscored that she never engaged in any of the alleged acts and never threatened anyone or anything.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 40 of the Complaint; as such, those allegations are denied.

41.     *Mr. Fain also stated to Ms. Hendrick that Defendant Augustine was the genesis of these*

*accusations.*

ANSWER:  Stryker Defendants are without information to admit or deny the allegations

contained in Paragraph 41 of the Complaint; as such, those allegations are denied.

42.    *In further retaliation against Ms. Hendrick, Corporate Defendants, through Defendant*

*Lanier, threatened SMT with revocation of its distributorship agreement with Corporate Defendants if*

*SMT hired Ms. Hendrick. As SMT wrote to Ms. Hendrick:*

> *Carrie,*
>
> *As you know, Southern Medical Technologies ("SMT") has a contractual agreement with Howmedica Osteonics Corp. ("Stryker") to sell Stryker products. During our discussions with you, we informed you of the importance of that relationship and how your behavior, including your departure, from Stryker could impact you working for SMT and selling Stryker products. Stryker has recently informed SMT that it has determined that you are ineligible to represent Stryker products as a result of your behavior while employed with Stryker and has exercised its contractual right to require that SMT not hire you as an Independent Sales Representative. As a result, unfortunately, we will not be moving forward with your hire as an Independent Sales Representative. Please let me know if you have any questions or would like to discuss. We wish you the best of luck in your future endeavors.*
>
> *Thank you,*
>
> *William Fain*
>
> *CEO*
>
> *Southern Medical Technologies*

ANSWER:  Stryker Defendants deny that they, individually or collectively, retaliated against

Hendrick or threatened SMT with revocation of its distributorship agreement as alleged in this

Paragraph. Stryker Defendants are without information to admit or deny the remaining allegations

in the Paragraph; as such, those allegations are denied.

43. *The actions taken by Defendants Augustine and Lanier, and by other employees and agents of Corporate Defendants were taken within the scope of their employment, thus rendering Corporate Defendants liable through the doctrine of respondeat superior. Further, the statements made by Defendants were intentionally false, and, at all times, Defendants acted with actual malice against Ms. Hendrick.*

ANSWER: The allegations contained in the paragraph are vague, as it is unclear what "actions" are being referenced. Answering further, the allegations contained in this Paragraph constitute legal conclusions to which no response is required; to the extent a response is required, those allegations are denied. Additionally, the Stryker Defendants specifically deny making any statement that was intentionally false or acting with actual malice towards Hendrick.

44. *As a result of Defendants unlawfully defaming Ms. Hendrick and interfering with her prospective employment, Ms. Hendrick has suffered financial losses, mental anguish, sleeplessness, loss of enjoyment of life, and other damages.*

ANSWER: Denied.

45. *At all times Defendants acted in bad faith with actual malice against Ms. Hendrick and intentionally violated her legal rights such that an award for punitive damages is appropriate.*

ANSWER: Denied.

**COUNT I: DEFAMATION**

46. *Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.*

ANSWER: Stryker Defendants incorporate herein by reference their responses to the

preceding Paragraphs of the Complaint.

47. *Ms. Hendrick was employed by Defendants most recently as Manager for sales Enablement & Digital Education.*

ANSWER: Stryker Defendants admit that Hendrick held the title of Manager for Sales Enablement & Digital Education, but otherwise deny the allegations in this Paragraph.

48. *In July of 2022, Ms. Hendrick was constructively discharged.*

ANSWER: Denied.

49. *In August of 2022, Ms. Hendrick received a job offer from Southern Medical Technology, a corporation with a distributorship agreement with Corporate Defendants.*

ANSWER: Stryker Defendants admit to the existence of a distributorship agreement but are without information to admit or deny the allegations contained in Paragraph 49 of the Complaint; as such, those allegations are denied.

50. *Defendant Lanier, within the scope of his employment as President of Upper Extremities with Corporate Defendants, wrote in a series of text messages to Mr. Fain, CEO of SMT, that:*

   a. *Ms. Hendrick threatened to burn down Stryker's headquarters, and Ms. Hendrick had plans to carry out the same;*

   b. *Ms. Hendrick "did everything but burn down the building";*

   c. *Ms. Hendrick "acted out" in an unprofessional manner; criminally volatile, and made false and negative comments about Stryker;*

   d. *Ms. Hendrick made implicitly criminal threats regarding persons and/or property of Stryker; and*

> e. Ms. Hendrick was a poor employee, demonstrated poor work performance, and was
> not suitable for employment.

ANSWER: Stryker Defendants admit that text messages were exchanged between Lanier and William Fain, but otherwise deny the allegations in this Paragraph.

51. *None of these comments by Defendant Lanier to Mr. Fain were true.*

ANSWER: Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 50; as such, the allegations in this Paragraph are likewise denied.

52. *Defendant Lanier knew or should have known that his statements to Mr. Fain were false.*

ANSWER: Stryker Defendants refer Plaintiff to their response to Paragraph 50 and accordingly deny the allegations in Paragraph 52 of the Complaint.

53. *Mr. Fain indicated to Ms. Hendrick that these comments were initially published by Defendant Augustine and republished by Defendant Lanier.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 53 of the Complaint; as such, those allegations are denied. Answering further, Stryker Defendants refer and incorporate herein their response to Paragraph 50 of the Complaint.

54. *Defendant Augustine knew or should have known that her statements were false.*

ANSWER: Denied. Answering further, Stryker Defendants refer and incorporate herein their response to Paragraph 50 of the Complaint.

55. *As a result of these false assertions of fact, SMT revoked Ms. Hendrick's job offer, causing Ms. Hendrick financial losses, mental anguish, sleeplessness, loss of enjoyment of life, reputational harm*

*and other damages.*

ANSWER:  Denied.

56.     *At all times Defendants acted in bad faith with actual malice against Ms. Hendrick and intentionally violated her legal rights such than an award for punitive damages is appropriate.*

ANSWER:  Denied.

## COUNT II: DEFAMATION *PER SE*

57.     *Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.*

ANSWER:  Stryker Defendants incorporate herein by reference their answers to the preceding paragraphs of the Complaint.

58.     *Ms. Hendrick was employed by Defendants most recently as Manager for Sales Enablement & Digital Education.*

ANSWER:  Stryker Defendants repeat and incorporate herein their response to Paragraph 47 of the Complaint.

59.     *In July of 2022, Ms. Hendrick was constructively discharged.*

ANSWER:  Denied.

60.     *In August of 2022, Ms. Hendrick received a job offer from Southern Medical Technology, a corporation with a distributorship agreement with Defendants.*

ANSWER:  Stryker Defendants admit there is a distributorship agreement but are otherwise without information to admit or deny the allegations contained in Paragraph 60 of the Complaint; as such, those allegations are denied.

61.     *Defendant Lanier wrote in a series of text messages to Mr. Fain, CEO of SMT, that:*

a. *Ms. Hendrick threatened to burn down Stryker's headquarters, and Ms. Hendrick had plans to carry out the same;*

b. *Ms. Hendrick "did everything but burn down the building";*

c. *Ms. Hendrick "acted out" in an unprofessional manner; criminally volatile, and made false and negative comments about Stryker;*

d. *Ms. Hendrick made implicitly criminal threats regarding persons and/or property of Stryker; and*

e. *Ms. Hendrick was a poor employee, demonstrated poor work performance, and was not suitable for employment.*

ANSWER: Stryker Defendants admit that text messages were exchanged between Lanier and William Fain, but otherwise deny the allegations in this Paragraph.

62. *None of these comments to Mr. Fain were true.*

ANSWER: Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 61; as such, the allegations in this Paragraph are likewise denied.

63. *Defendant Lanier knew or should have known that his statements to Mr. Fain were false.*

ANSWER: Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 61; as such, the allegations in this Paragraph are likewise denied.

64. *All comments above impugned Ms. Hendrick's professional reputation.*

ANSWER: Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 61 and are without information to admit or deny the remaining allegations contained in Paragraph 64 of the Complaint; as such, those allegations are denied.

65.     Mr. Fain indicated to Ms. Hendrick that these comments were initially published by Defendant Augustine and republished by Defendant Lanier.

ANSWER:  Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 65 of the Complaint; as such, those allegations are denied.

66.     Defendant Augustine knew or should have known that her statements were false.

ANSWER:  Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 61; as such, the allegations in this Paragraph are likewise denied.

67.     As a result of these false assertions of fact, SMT revoked Ms. Hendrick's job offer, causing Ms. Hendrick financial losses, mental anguish, sleeplessness, loss of enjoyment of life, reputational harm, and other damages.

ANSWER:  Denied.

68.     At all times Defendants acted in bad faith with actual malice against Ms. Hendrick and intentionally violated her legal rights such that an award for punitive damages is appropriate.

ANSWER:  Denied.

## COUNT III: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

69.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

ANSWER:  Stryker Defendants incorporate herein by reference the answers to the preceding paragraphs of the Complaint.

70.     Ms. Hendrick was employed by Defendants most recently as Manager for Sales Enablement & Digital Education.

ANSWER:  Stryker Defendants repeat and incorporate herein their response to Paragraph 47 of the

Complaint.

71.    *In July of 2022, Ms. Hendrick was constructively discharged.*

ANSWER:  Denied.

72.    *In August of 2022, Ms. Hendrick received a non-contingent job offer from Southern Medical Technology, a corporation with a distributorship agreement with Corporate Defendants.*

ANSWER: Stryker Defendants admit there is a distributorship agreement but are otherwise without information to admit or deny the allegations contained in Paragraph 72 of the Complaint; as such, those allegations are denied.

73.    *Defendants Lanier and Augustine, personally and through their professional capacities with Corporate Defendants, knew that Ms. Hendrick received a job offer from SMT.*

ANSWER:  Stryker Defendants admit that at some point Defendants Lanier and Augustine became aware that Hendrick was or had been in talks with SMT about employment or potential employment.

74.    *Defendant Lanier, within the scope of his employment as President of Upper Extremities with Corporate Defendants, wrote in a series of text messages to Mr. Fain, CEO of SMT, that:*

    *a.  Ms. Hendrick threatened to burn down Stryker's headquarters, and Ms. Hendrick had plans to carry out the same;*

    *b.  Ms. Hendrick "did everything but burn down the building";*

    *c.  Ms. Hendrick "acted out" in an unprofessional manner; criminally volatile, and made false and negative comments about Stryker;*

    *d.  Ms. Hendrick made implicitly criminal threats regarding persons and/or property of*

*Stryker; and*

    *e.   Ms. Hendrick was a poor employee, demonstrated poor work performance, and was not suitable for employment.*

ANSWER:  Stryker Defendants admit that text messages were exchanged between Lanier and William Fain, but otherwise deny the allegations in this Paragraph.

75.    *None of these comments to Mr. Fain were true.*

ANSWER:  Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 74; as such, the allegations in this Paragraph are likewise denied.

76.    *Defendant Lanier knew or should have known that his statements to Mr. Fain were false.*

ANSWER:  Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 74; as such, the allegations in this Paragraph are likewise denied.

77.    *All the comments above impugned Ms. Hendrick's professional reputation. The comments were intentionally published to harm Ms. Hendrick's relationship with SMT by paining her in a viciously horrendous false light.*

ANSWER:  Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 74 and are without information to admit or deny the remaining allegations in Paragraph 77 of the Complaint.

78.    *Further, Corporate Defendants threatened to end their distributorship agreement with SMT if SMT hired Ms. Hendrick.*

ANSWER:  Denied.

79.    *Upon information and belief, Corporate Defendants did not end their distributorship*

*agreement with SMT once SMT revoked Ms. Hendrick's job offer.*

ANSWER: Stryker Defendants admit that there is a distributorship agreement but otherwise deny the allegations and any of the implications included in Paragraph 79 of the Complaint.

80. *Mr. Fain indicated to Ms. Hendrick that these comments were initially published by Defendant Augustine and republished by Defendant Lanier.*

ANSWER: Stryker Defendants are without information to admit or deny the allegations contained in Paragraph 80 of the Complaint; as such, those allegations are denied.

81. *Defendant Augustine knew or should have known that her statements were false.*

ANSWER: Stryker Defendants deny that Lanier made the statements as alleged in Paragraph 74; as such, the allegations in this Paragraph are likewise denied.

82. *As a result of these false assertions of fact, SMT revoked Ms. Hendrick's job offer, causing Ms. Hendrick financial losses, mental anguish, sleeplessness, loss of enjoyment of life, reputational harm and other damages.*

ANSWER: Denied.

83. *At all times Defendants acted in bad faith with actual malice against Ms. Hendrick and intentionally violated her legal rights such that an award for punitive damages is appropriate.*

ANSWER: Denied.

### COUNT IV: VIOLATION OF VA. CODE ANN. § 40.1-27.3

84. *Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.*

ANSWER: Stryker Defendants incorporate herein by reference the answers to the preceding paragraphs.

85.     Ms. Hendrick was employed by Defendants most recently as Manager for Sales Enablement & Digital Education.

ANSWER:  Stryker Defendants repeat and incorporate herein their response to Paragraph 47 of the Complaint.

86.     Ms. Hendrick reported, in good faith, violations of Title VII of the Civil Rights Acts and Virginia Human Rights Act to Human Resources, namely discrimination on the basis of religion and gender, to her Supervisor, Defendant Augustine, and Human Resources.

ANSWER:  Denied.

87.     Ms. Hendrick's reports were protected by Va. Code § 40.1-27.3(A)(1).

ANSWER:  Stryker Defendants aver that the allegations in this Paragraph constitute legal conclusions to which no response is required; to the extent a response is required, those allegations are denied.

88.     Thereafter, Defendant Augustine made Ms. Hendrick's work environment so untenable and intolerable, Ms. Hendrick had no other choice but to be constructively discharged on or about July 27, 2022.

ANSWER:  Denied.

89.     Specifically, Defendant Augustine retaliated against Ms. Hendrick in violation of Va. Code § 40.1-27.3(A) in that she constructively "discharge[d], discipline[d], threaten[ed], discriminate[d] against, [and] [] penalize[d] [] [Ms. Hendrick,] [and took] [] other retaliatory action regarding [Ms. Hendrick's] [] compensation, terms, conditions, location, or privileges of employment."[1]

---

[1] Unless noted otherwise, all brackets are in the original.

ANSWER:  Denied.

90.     As a result of Defendants' retaliation, Ms. Hendrick seeks, "(i) an injunction to restrain continued violation of this section, (ii) [front wages in lieu of] [] reinstatement [] to the same position held before the retaliatory action [], and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

ANSWER:  Denied.  Answering further, Stryker Defendants deny that Plaintiff is entitled to any of the relief requested in Paragraph 90 of the Complaint.

## STRYKER DEFENDANTS' AFFIRMATIVE AND/OR OTHER DEFENSES

91.     All allegations not specifically admitted are hereby denied, and by setting forth their defenses in this section, Stryker Defendants are not assuming any burden that by law is not theirs.

92.     Hendrick has failed to state a claim as a matter of law and has otherwise failed to allege facts, in whole or in part, upon which relief may be granted.

93.     All or a portion of Hendrick's claims are barred by the doctrine of unclean hands.

94.     Hendrick has failed to comply with the procedural prerequisites to assert a claim under Va. Code § 40.1-27.3

95.     Hendrick's claims of defamation, as well as those claims that rely on claims of defamation, fail as a matter of law because the alleged defamatory statements are not false, but rather, are true or substantially true.

96.     Hendrick's claims of defamation, as well as those claims that rely on claims of defamation, fail as a matter of law because the alleged defamatory statements are statements of

opinion and not actionable as a matter of law.

97. Hendrick's claims of defamation, as well as those claims that rely on claims of defamation, fail as a matter of law because the statements were privileged, both by statute and under the common law.

98. Hendrick's claims of defamation, as well as those claims that rely on claims of defamation, fail as a matter of law because the Defendants did not publish the alleged defamatory statements, nor cause the alleged defamatory statements to be published to a third party. In addition, Hendrick's defamation claims are barred by the doctrine of intra-corporate immunity.

99. Hendrick's claims of defamation, as well as those claims that rely on a claim of defamation, fail as a matter of law because the alleged defamatory statements were not made with malice or negligent disregard of whether the statements were false.

100. Hendrick's claims of defamation, as well as those claims that rely on claims of defamation, fail as a matter of law because the alleged damages, if they exist at all, resulted from a cause not proximately caused by or related to any act or omission by Stryker Defendants.

101. Hendrick's claims of defamation, as well as those claims that rely on claims of defamation, fail as a matter of law because the alleged damages, if they exist at all, resulted from a cause proximately caused by or related to Hendrick's own acts or omissions.

102. Hendrick has not set forth sufficient facts to legally support an award of punitive damages for all or a portion of Hendrick's claims and Stryker Defendants did not engage in any conduct which would rise to a level required to sustain an award of punitive damages.

103. Hendrick has failed to sufficiently plead facts that would establish malice as a matter

of law.

104.     To the extent that Hendrick has been damaged in any way, which is expressly denied herein, Hendrick's claims for damages are barred or reduced to the extent Hendrick failed to take reasonable steps to mitigate any alleged damages.

105.     All or a portion of Hendrick's claims are barred by reason of setoff and/or offset.

106.     Stryker Defendants reserve the right to raise any additional defenses, by moving to amend this Answer upon the discovery of such defenses.

<u>AVERMENTS AND ALLEGATIONS IN SUPPORT OF<br>STRYKER DEFENDANTS' DEFENSES</u>

107.     During her employment, Hendrick had access to a significant amount of confidential information and other propriety and confidential material that is owned and maintained by the Corporate Defendants.

108.     The Corporate Defendants employed reasonable measures to maintain the confidentiality of such documents and information.

109.     Shortly after providing her notice of resignation on July 27, 2022, Hendrick secretly copied and transferred to herself a significant amount of confidential and proprietary files, information, and data that belonged to the Corporate Defendants.  More specifically, during her last two days of employment, Hendrick sent to her private Gmail account five separate emails with eleven attachments.  Those emails and attachments included a significant amount of confidential and proprietary information, including files that were specifically and clearly marked "confidential."

110.     During this same timeframe, after she had submitted her notice of resignation, Hendrick transferred a significant amount – potentially thousands – of confidential and proprietary

files, documents and information to seven non-company flash drives. Although an investigation is still ongoing, it appears that during her final two days of employment, between 3:59 pm on July 28, 2022, and 9:11 am on July 29, 2022, Hendrick inserted one flash drive after another, and immediately prior to and/or while these flash drives were inserted into her company laptop, Hendrick accessed at least 23 separate confidential and proprietary folders, including but not limited to folders named "Competitive," "2022 Budget," and "Business Plan."

111.    It appears further that Hendrick created and downloaded onto one of those seven non-company flash drives a document titled, "carrie_email.CSV," which was saved to a Stryker\Document subfile, suggesting that Hendrick copied and downloaded some or all of her email files from her corporate email account.

112.    On her final day of employment, after accessing and downloading potentially thousands of confidential and proprietary files and documents, between 4:27 pm on July 28, 2022, and 9:04 am on July 29, 2022, Hendrick deleted approximately 410 confidential and proprietary files and documents that belonged to the Corporate Defendants.

113.    Then, at 9:12 am on July 29, 2022, Hendrick conducted two Google searches using the following terms: "how to erase the hard drive on an intel".

114.    Finally, and after searching for how to erase a hard drive, Hendrick conducted one additional Google search using the following term: "WeTransfer." As explained on an Apple website, "WeTransfer is the simplest way to send (and receive) big files." *See* WeTransfer: Send Large Files on the App Store (apple.com)

115.    Hendrick has admitted that she tried to send some emails to herself but claimed that

she was unable to send the files. She also admitted to using a flash drive on her final day of employment but provided no explanation about what she was using with that flash drive or what files were copied onto that flash drive.

116.     Upon information and belief, Hendrick has taken the Corporate Defendants' files with her to Virginia and still maintains possession of the Corporate Defendants' confidential and proprietary files, documents and information.

WHEREFORE, having fully answered the claims in the Complaint, the Stryker Defendants request that the Complaint be dismissed, with prejudice, that the Stryker Defendants be awarded their reasonable attorney's fees and costs incurred in defending this matter, that should any amount be awarded that such amount be limited if not eclipsed by the amount of any setoff/offset, and that the Stryker Defendants be granted any and other relief the Court deems appropriate.

Respectfully submitted,

STRYKER CORP.
WRIGHT MEDICAL TECHNOLOGY, INC.
STRYKER SALES, LLC
HOWMEDICA OSTEONICS CORP.
TIM LANIER
AVERY AUGUSTINE

By:_____/s/_____
Kevin D. Holden, Esq. (VSB #30840)
Shannon Delano, Esq (VSB # 95427)
JACKSON LEWIS P.C.
701 E. Byrd Street, 17th Floor
Richmond, VA 23219
Telephone: 804-212-2888

Facsimile: 804-649-0403
Kevin.Holden@jacksonlewis.com
Shannon.Delano@jacksonlewis.com

CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall provide service to the counsel listed below:

Thomas S. Strelka, Esq.
L. Leigh R. Strelka, Esq.
N. Winston West, IV, Esq.
Brittany M. Haddox, Esq.
Monica L. Mroz, Esq.
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*

By: _____/s/_____
Kevin D. Holden, Esq. (VSB #30840)
JACKSON LEWIS P.C.
701 E. Byrd Street, 17th Floor
Richmond, VA 23219
Telephone: 804-212-2888
Facsimile: 804-649-0403
Kevin.Holden@jacksonlewis.com

4886-4926-0870, v. 1